# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMES L. WALKER, JR.                                          CIVIL ACTION

VERSUS

                                                             23-168-SDD-SDJ

APPLE STUDIOS LOUISIANA, LCC,
INTERSTATE FIRE & CASUALTY
INSURANCE COMPANY,
ENTERTAINMENT PARTNERS, LLC,
WESTBROOK STUDIOS, LLC, ESCAPE
ARTISTS PRODUCTIONS, LLC,
MCFARLAND ENTERTAINMENT, LLC,
FUQUA FILMS, INC., ANTOINE FUQUA,
and ROBERT B. RICHARDSON

## RULING

This matter is before the Court on the *Motions to Dismiss* filed by Defendants,

Apple Studios Louisiana, LLC, Entertainment Partners, LLC, Escape Artists Productions,

LLC, Fuqua Films, Inc., Antoine Fuqua, and Westbrook Studios, LLC;[1] Defendant Robert

Bridge Richardson ("Richardson");[2] Defendant Spydercam, Inc.;[3] and Defendant Jeffrey

J. Danshaw ("Danshaw")(or collectively, "Defendants").[4] Plaintiff, James L. Walker, Jr.

---

[1] Rec. Doc. 5.
[2] Rec. Doc. 8.
[3] Rec. Doc. 13.
[4] Rec. Doc. 15.

("Plaintiff") filed *Oppositions*[5] to these motions, to which Defendants filed *Replies*.[6]  For the following reasons, the Defendants' motions will be granted.

## I.      FACTUAL BACKGROUND

This lawsuit arises out of an injury that occurred on the set of a film production. Plaintiff alleges he was struck in the face by a cable-suspended camera operating system while working as a background actor on the production of the film *Emancipation*.[7]  Plaintiff also alleges that Defendants Apple Studios Louisiana, GEP Cencast, Westbrook, Escape, M. Inc., and Fuqua Films comprised what he termed the "production staff," which "collectively oversaw the setup, filming, and ultimately the production of the movie."[8]  He further claims Defendant Fuqua was the director who controlled "the sequence of activities on the movie set requiring the suspended camera system be utilized in an unsafe and dangerous manner."[9] He also asserts that the cinematographer, Defendant Robert B. Richardson, and/or his unidentified camera film crew operated the suspended camera in a "dangerous manner" at the supervision and direction of both Fuqua and the "production staff."[10]

In a blanket manner, Plaintiff asserts both negligence and intentional tort claims against all Defendants, alleging they are all liable for:

      a. Failing to properly train [their] employees and/or subordinates;
      b. Failing to properly instruct [their] employees and/or subordinates;
      c. Failing to ensure that [their] workplace was safe;
      d. Vicarious liability for the acts of [their] employees;
      e. Choosing to operate the cable suspended camera system in an unsafe manner;

---

[5] Rec. Docs. 9, 11, 20, 21, respectively.
[6] Rec. Docs. 10, 12, 25, & 24, respectively.
[7] Rec. Doc. 1-2, ¶3.
[8] *Id.* at ¶4.
[9] *Id.* at ¶5.
[10] *Id.* at ¶¶7-8.

    f. Choosing to instruct employees to engage in dangerous activities that certainly would and did cause harm to unsuspecting actors on set;
    g. Choosing to operate the cable suspended camera system in an unsafe manner despite knowledge the certainty of injury to cast members;
    h. Other acts or omissions to be shown at trial in this matter.[11]

Regarding the alleged intentional conduct, Plaintiff alleges the incident was "substantially certain to occur given [Defendants'] knowledge of the risk of a cable suspended camera system while actors are directly below the system and in harms [sic] way"; and (2) "despite this knowledge, the Defendants choose to operate the cable suspended camera system in this unsafe manner with cast members directly below . . . . [and] intentionally disregarded the known safety risks . . . ."[12]

      Plaintiff originally filed suit in state court, and Defendants removed this action to the Middle District of Louisiana.[13]  Defendants Apple Studios, Westbrook Global, Escape Artists Productions, M. Inc., Fuqua Films, and Antoine Fuqua filed the initial 12(b)(6) motion seeking dismissal of the entire action for failure to state a claim. Subsequently, Richardson, Danshaw, and Spydercam filed 12(b)(6) motions to join and adopt the original motion.

      In in the initial motion, Defendants contend generally that, in an effort to avoid dismissal based on the exclusivity of the Louisiana Workers' Compensation Act ("LWCA"), Plaintiff fails to identify certain Defendants as his employers and unsuccessfully attempts to invoke the intentional tort exception.   Defendants argue Plaintiff's suit should be dismissed because he fails to allege any facts specific to the roles or conduct of Fuqua or the "production staff" defendants.  He further fails to set forth:

---

[11] *Id.* at ¶7.
[12] *Id.* at ¶¶6-7.
[13] Rec. Doc. 1.

"(1) how or why employees were improperly trained or instructed; (2) how any of the defendants failed to ensure the workplace was safe; (3) in what way the cable suspended camera system was operated in an 'unsafe manner'; (4) what 'dangerous activities' were conducted; [and] (5) why positioning the suspended camera above actors (i.e., its purpose and function) was 'substantially certain' to result in Plaintiff's injuries."[14] Defendants further argue Plaintiff does not allege his relationship to any of the Defendants, such as whether they were his employer, supervisor, colleague, or something else. "Stated otherwise, the Petition and Amended Petition contain no facts to suggest, much less sufficiently allege, that Plaintiff's accident was the result of anything any of the defendants specifically did or failed to do."[15]

The subsequent motions by Richardson, Danshaw, and Spydercam fully adopt the facts, law, and argument from the initial motion; however, each of these Defendants address the specific allegations asserted against them in their supporting memoranda. For Richardson, the petition states that he chose to operate the camera system in a way that was "certain or substantially certain to cause injuries."[16]  For Danshaw, the petition states that he was "tasked with designing action sequences, organizing case members, and choreographing complex movements to ensure that everyone on set remains safe."[17] The only distinct allegation as to Spydercam is that it is "vicariously liable for its employees' operation" of the camera system.[18]  Aside from these specific allegations, the

---

[14] Rec. Doc. 5-1, p. 4.
[15] *Id.* at p. 5.
[16] Rec. Doc. 1-2, ¶3.
[17] *Id.* at ¶4.
[18] *Id.* at ¶¶6-7.

allegations against Richardson, Danshaw, and Spydercam are otherwise identical to those against the other co-Defendants.

Plaintiff opposes Defendants' motions, arguing generally that he has pled the facts "in great detail and specificity" and will not "regurgitate[]" the facts in the respective opposition briefs.[19]  Plaintiff claims the allegations pled specify the role and conduct of the production crew and Defendant-employers for purposes of negligence, and Plaintiff contends, "[a]s discovery in this matter progresses, the underlying cause of the systemic failure and intentional acts of each defendant will be brought to light."[20]

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[21]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[22]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[23]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

---

[19] Rec. Doc. 9, p. 2; Rec. Doc. 11, p. 2; Rec. Doc. 20, p. 2; Rec. Doc. 21, p. 2.
[20] Rec. Doc. 9, p. 4; Rec. Doc. 20, p. 3; Rec. Doc. 21, p. 3.
[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[22] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[23] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

of the elements of a cause of action will not do."[24]   A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[25]   However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26]   In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[27]   "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[28]   On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[29]

### B.  The Exclusivity of the LWCA – Negligence Claims

The LWCA provides immunity to an employer from negligence-based actions brought by employees.[30]   The Act expressly provides that the worker's compensation scheme "shall be exclusive over all other rights, remedies, and claims for damages…as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer… ."[31]   There can be no dispute that all negligence claims asserted by Plaintiff are barred by the LWCA as dictated by the Act and a wealth of jurisprudence.[32]   In his oppositions, Plaintiff ignores the LWCA and offers no

---

[24]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").
[25]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[26]  *Twombly*, 550 U.S. at 570.
[27]  *Iqbal*, 556 U.S. at 678.
[28]  *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[29]  *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[30]  La. R.S. 23:1021, *et seq.*
[31]  La. R.S. 23:1032(A)(1)(a).
[32]  *See Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD, 2021 WL 261538 (M.D. La. Jan. 26, 2021; *Bertaut v. Folger Coffee Co.*, No. CIVA 06-2437 GTP, 2006 WL 2513175, *3 (E.D. La. Aug.

jurisprudence to support any contrary argument regarding his negligence claims.

A general overview of the LWCA is relevant to the Court's analysis. The Western District of Louisiana in *Marceaux v. Lafayette City-Parish Consol. Government*[33] precisely explained the interplay between Louisiana tort law and the LWCA:

> Article 2315 is the seminal statute for Louisiana tort law. Article 2317 modifies Article 2315 by expressly making employers liable for the torts of their employees. Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032, however, an employee injured while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort. The workers' compensation statute represents a compromise by which the employer and employee both surrender valuable rights, with the employee agreeing to accept the certainty of workers' compensation benefits as his exclusive remedy in exchange for surrendering his right to seek tort recovery from his employer.[34] This principle also immunizes employees against negligence claims by their co-workers.[35]

Accordingly, all negligence claims asserted by Plaintiff against the Defendants are barred by the LWCA, his exclusive remedy. As such, his negligence claims will be dismissed.

### C. LWCA and the Intention Tort Exception

The LWCA provides the exclusive remedy for injury claims unless the injury results from an intentional act.[36] The intentional act/tort exception provides that an employee may sue in tort to recover beyond worker's compensation benefits when the injury is

---

29, 2006) (Zainey, J.) (dismissing plaintiff's claims against her employer for negligent infliction of emotional distress, failure to train and failure to supervise as they are barred by the Louisiana Workers' Compensation Statute); *Oramous v. Mil. Dep't*, No. CIV.A. 05-3677, 2007 WL 1796194, *9 (E.D. La. June 18, 2007) (Wilkinson, J.) ("Plaintiff's claims of negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the LWCA").

[33] 921 F.Supp.2d 605 (W.D. La. 2013).

[34] *Id.* at 644 (citing *Harris v. Wal–Mart Stores, Inc.*, 205 F.3d 847, 849 (5th Cir. 2000). *See, also, Benoit v. Turner Industries Group, L.L.C.*, 2011–1130 (La.01/24/12), 85 So.3d 629, 634).

[35] *Id.* (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La.1991) ( "LSA–R. S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act.")).

[36] La. R.S. § 23:1032(B) ("Nothing in this Chapter shall affect the liability of the employer, … to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.").

proximately caused by the employer's intentional tortious act.[37]  "The words 'intentional act' mean the same as 'intentional tort' in reference to civil liability."[38]  The exception requires that the person acting and causing injury must either: (1) "consciously desire[ ] the physical result of his act, whatever the likelihood of that result happening from his conduct", or (2) "know[ ] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[39]  The focus is on the consequences of the act rather than the act itself: "Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[40]

A plaintiff's burden "for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting,"[41] "and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted."[42]  As such, the standard for prevailing on a claim of intentional tort under Louisiana law is "extremely high."[43]  "Even knowledge of a high degree of probability that injury will occur is insufficient to establish that the employer was substantially certain that injury would occur so as to impute intent to him within the intentional tort exception to the worker's compensation statute exclusive remedy

---

[37] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So.2d 208, 210; La. R.S. § 23:1032(b).
[38] *Bazley v. Tortorich*, 397 So.2d 475, 480 (La. 1981).
[39] *Id.* at 481; *see also White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves*, 731 So.2d at 211.
[40] *White*, 585 So.2d at 1208.
[41] *Hodges v. The Mosaic Co.*, No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007).
[42] *Chiasson v. Hexion Specialty Chemicals, Inc.*, No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012)(citing *e.g., Reeves*, 731 So.2d at 211-12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1140-41; *Snow v. Lenox Int'l*, 27,533 (La.App. 2 Cir. 11/1/95), 662 So.2d 818, 820; *Rogers v. La. Dept. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, 259, *writ denied*, 992 So.2d 931 (La. 2008); *Bridges v. Carl E. Woodward, Inc.*, 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, *writ denied*, 666 So.2d 674 (La. 1996); *Guillory v. Dorntar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996); *Dark v. Georgia-Pacific Corp.*, 176 Fed. App'x 569 (5th Cir. 2006)).
[43] *Wilson v. Kirby Corporation*, No. 12-0080, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012).

provisions."[44]    Therefore, "[s]ubstantial certainty requires more than a reasonable probability that an injury will occur; this term has been interpreted as being equivalent to inevitable, virtually sure and incapable of failing."[45]

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering the claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."[46]    Mere knowledge and appreciation of risk alone do not constitute intent.[47]    Furthermore, even an employer's knowledge that a situation is dangerous does not give rise to substantial certainty that injury will result.[48]    "[B]elieving that someone may, or even probably will, eventually get hurt if the workplace practices continue does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation."[49]    Moreover, even knowledge that similar injuries have occurred in the past does not establish that injury is substantially certain to occur in the future,[50] and violations of safety standards are

---

[44] Id., citing King v. Schulykill Metals Corporation, 581 So.2d 300, 303 (La.App. 1 Cir. 1991).

[45] Id., quoting King, 581 So.2d at 302 (internal citations omitted).

[46] Reeves, 731 So.2d at 210 (quotation omitted); see also Micele v. CPC of Louisiana, Inc., 98-0044 (La.App. 4 Cir. 3/25/98), 709 So.2d 1065 (noting that courts in Louisiana "have cautioned that the intentional tort exception should be narrowly construed, holding that mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or the failure to use safety equipment by an employer does not constitute intentional wrongdoing") (citations omitted)).

[47] Williams v. Gervais F. Favrot Co., 573 So.2d 533 (La.App. 4 Cir. 1991), writ denied, 576 So.2d 49 (La. 1991).

[48] Id., citing Marino v. Martin's Oil Country Tubular, Inc., 931 So.2d 1089, 1090 (La. 2006) (citing Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140 (La.App. 4 Cir. 1993), writ denied, 629 So.2d 347 (La. 1993)); see also Guillory, 95 F.3d at 1327 ("The substantial certainty test is satisfied when an employer consciously subjects an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable.").

[49] Dark, 176 Fed. App'x at 571 (quoting Reeves, 731 So.2d at 211-12).

[50] Snow, 662 So.2d at 820.

generally insufficient to fulfill the substantial certainty requirement.[51] An employer's failure to properly train an employee is insufficient to maintain an intentional tort claim,[52] as is the failure to use safety equipment by an employer.[53] Likewise, "actions which lead to a 'high probability' of injury do not rise to the level of substantial certainty, and even where acts or omissions constitute gross negligence, the substantial certainty exception is not met."[54]

The Court has carefully considered Plaintiff's Petition, Amended Petition, and opposition memoranda.  Applying the foregoing jurisprudence, the Court finds that Plaintiff's allegations of intentional tortious conduct by the Defendants are woefully insufficient to state a claim that falls outside the exclusive remedy of the LWCA.  Plaintiff alleges that Richardson, as cinematographer, "controlled and instructed" all actions taking place on the set, including the injury-causing placement of the cameras and use of the cable suspended camera system.[55]  Plaintiff then attributes this placement and use of the camera system to all named Defendants, alleging that each intended the harm caused based on their relationship to the production.  According to Plaintiff, this placement was "clearly unsafe, specifically operating the system directly above cast members."[56]  But Plaintiff offers no factual support for his use of formulaic buzzwords that the use and operation of the camera system was "certain or substantially certain to cause" Plaintiff's

---

[51] *Reeves,* 731 So.2d at 211.

[52] *See, e.g., Rogers,* 982 So.2d at 258-59; *Armstead,* 618 So.2d at 1143; *Carr v. Spherion,* No. 08-0326, 2009 WL 455408, at *9-10 (W.D. La. Jan. 28, 2009).

[53] *DelaHoussaye v. Morton Intern. Inc.,* 300 Fed. App'x. 257, 258, (5th Cir. 2008), citing *Micele,* 709 So.2d at 1068.

[54] *Chaisson,* at *6, quoting *Guillory,* 95 F.3d at 1327-28 (finding that even where some employees and supervisors were aware that several forks had detached from forklifts and some employees knew that subject forklift had fallen off, the evidence established only, at best, negligence).

[55] Rec. Doc. 11, p. 3.

[56] *Id.*

injuries.[57]   Indeed, numerous federal district courts in Louisiana have found that a "formulaic pleading of the words or phrases 'intentional,' 'intentionally,' 'intentional acts,' 'substantially certain,' and 'conscious indifference' before, or in combination with," a plaintiff's allegations "'does not transform any set of facts into an intentional tort and does not provide protection against a well-founded motion to dismiss.'"[58]

In *Guillory v. Domtar Industries Inc.*,[59] the Fifth Circuit noted "[c]ourts narrowly interpret the intentional act loophole to the workers' compensation system."[60] In *Guillory*, an employee was injured after being struck on the head by a fork that fell from a forklift. The district court found that the employer did not intend to injure the employee; thus, the employee could not recover against the employer in tort based on the exclusivity provisions of the LWCA.  Of particular note, the *Guillory* court remarked that, even if the falling forks created a "'high probability' of injury, this would not establish 'intent' sufficient to bypass the workers' compensation system."[61] Further, the Fifth Circuit held that an employer's knowledge of falling forks by itself cannot establish intent on the part of the employer.[62]

In *Williams v. Fresenius USA Manufacturing, Inc.*, the district court for the Eastern District of Louisiana addressed a situation where a plaintiff brought suit against her employer following a work-related slip-and-fall incident.[63] The plaintiff there claimed that

---

[57] Rec. Doc. 1-2, p. 27, ¶5-A.
[58] *Segue v. Walmart Inc.*, No. , 2021 WL 5083805, at *3 (quoting *Graft v. Mason*, 2009 WL 799973, at *3 (E.D. La. Mar. 19, 2009)).
[59] 95 F.3d 1320 (5th Cir.1996).
[60] Guillory, 95 F.3d at 1328 (citing Bridges v. Carl E. Woodward, Inc., 663 So.2d 458 (La.App. 4th Cir.1995), writ denied, 666 So.2d 674 (La.1996)).
[61] Guillory, 95 F.3d at 1328 (citing Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4th Cir.1993), writ denied, 629 So.2d 347 (La.1993)).
[62] Guillory, 95 F.3d at 1327.
[63] 2009 WL 10679751, at *1 (E.D. La. Oct. 15, 2009).

her employer intentionally harmed her by not repairing leaking machines at work.[64] The court granted the employer's motion to dismiss, concluding that the plaintiff's claims amounted to claims of gross negligence, reckless or wanton conduct, but not an intentional act:[65]

> While it is conceivably reprehensible conduct to subject employees to a work environment where they are ... working in frequently occurring puddles of water, such conduct does not meet the strict standard applied to the LWCA intentional act exception. Plaintiff is essentially claiming that there was a high probability that someone would eventually be injured. This type of claim is not sufficient to fall under the LWCA intentional act exception.[66]

Further, the court recited the well-established rule that use of words or phrases like "intent," "conscious," or "substantially certain" in a pleading "is not a 'talisman that can change allegations of gross negligence into colorable claims of true intentional torts.'"[67]

This Court addressed the issue in Garcia v. Westlake Chemical Corporation when a plaintiff was injured when the hose to a pressure washer he was using exploded while he was working at his employer's chemical plant.[68] The plaintiff sued his employer, asserting both negligence and intentional tort claims, alleging that his employer was "substantially certain" that injury would result due to the purported "failures" by the employer to, *inter alia*, adequately train and supervise employees, properly maintain and inspect equipment, and keep employees safe.[69] The employer countered that the plaintiff failed to allege any facts to show that the employer had reason to know that the hose to the pressure washer would "explode" or cause injuries.[70]

---

[64] *Id.*

[65] *Id.* at *4.

[66] *Id.* (internal quotation marks, citation, and alteration omitted).

[67] *See id.* (quoting *Boudreaux v. Verret*, 422 So. 2d 1167, 1171 (La. App. 1982)).

[68] No. 18-764-BAJ-EWD, 2019 WL 4252801 (M.D. La. Aug. 22, 2019).

[69] *Id.* at *4.

[70] *Id.*

The Court held that the plaintiff failed to state a claim against his employer, finding that "'an employer's knowledge of a work place risk to an employee does not constitute "intent" under the intentional act exclusion.'"[71]    Noting that the plaintiff had also pled general negligence and gross negligence against the employer, the Court remarked:

> Generally, Louisiana courts recognize that "mere knowledge and appreciation of a risk does not constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulation or the failure to use safety equipment by an employer does not constitute intentional wrongdoing." *DelaHoussaye v. Morton Intern. Inc.*, 300 Fed.Appx. 257, 258 (5th Cir. 2008) (citing *Micele v. CPC of La., Inc.*, 709 So.2d 1065, 1068 (La. App. 4 Cir. 1998)); *see also Rosales v. Bunzzy's Enter. Realty LLC*, No. 06–11149, 2008 WL 754856, at *2 (E.D. La. Mar. 19, 2008) (identifying certain situations that Louisiana courts have determined "**almost universally do not form the basis of an intentional tort: failure to provide a safe place to work, poorly designed machinery**, failure to follow OSHA safety provisions, failure to provide requested safety equipment, **and failure to correct unsafe working conditions**.")(citing *Zimko v. American Cyanamid*, 905 So.2d 465, 477 (La. App. 4 Cir. 2005)) (emphasis added).[72]

Plaintiff's intentional tort allegations mirror those considered in the above cases. Plaintiff offers no facts that would meet the "exacting" standard of the intentional tort exception to the LWCA. Plaintiff ostensibly acknowledges the insufficiency of his pleadings in arguing that, "[a]s discovery in this matter progresses, the underlying cause of the systemic failure and intentional acts of each defendant will be brought to light."[73] But no plaintiff is permitted to use the discovery process as a fishing expedition in the hopes of uncovering actionable conduct.   Indeed, the Supreme Court has held that, although Rule 8 no longer requires hyper-technical pleading, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[74]  Thus, "a plaintiff

---

[71] *Id.* at*6 (quoting *Pate v. Adell Compounding Inc.*, 970 F.Supp.542, 547 (M.D. La. 1997)).
[72] *Id.* (quoting *Williams v. Syngenta Corp.*, No. 15-644-SDD-RLB, 2016 WL 807762, at *5 (M.D. La. Feb. 3, 2016)).
[73] Rec. Doc. 9, p. 4; Rec. Doc. 20, p. 3; Rec. Doc. 21, p. 3.
[74] *Iqbal*, 556 U.S. at 678-79.

cannot engage in discovery in an attempt to obtain facts that support a currently baseless claim."[75]  "Discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the Plaintiff must have some basis in fact for the action."[76]  "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, **not to find out if it has any basis for a claim**."[77]   Therefore, Plaintiff's intentional tort claims will be dismissed.

## III.    CONCLUSION

For the reasons set forth above, the Defendants' *Motions to Dismiss*[78] are granted. Plaintiff's negligence claims are clearly barred by the LWCA.  While Plaintiff seeks leave to amend for a second time if the Court grants Defendants' motions, the Court finds that any amendment would be futile.  Plaintiff ostensibly concedes he needs discovery to uncover facts to support the intentional tort exception, and this is not permitted by law. Thus, Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30 day of January, 2024.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[75] *Lee v. Ard*, 2017 WL 5349493, at *6 (M.D. La. Nov. 13, 2017)(internal quotation marks omitted).
[76] *Russell v. Choicepoint Services, Inc.*, 302 F.Supp.2d 654, 671 (E.D. La. 2004)(quoting *Zuk v. Eastern Pa. Psychiatric Inst. of the Med. College*, 103 F.3d 294, 299 (3d Cir.1996)(internal quotation marks omitted)).
[77] *Id.* (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (citing *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989))(internal quotation marks omitted)(emphasis added)).
[78] Rec. Docs. 5, 8, 13, 15.